IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:20-CR-248** |
| vs. | |
| | **MEMORANDUM AND ORDER** |
| RYAN D. TERRY, JEFFREY D. DAILEY, and TNT ASSOCIATES, LLC, a Nebraska Limited Liability Company, | |
| Defendants. | |

This matter is before the Court for its review of the Magistrate Judge's Findings and Recommendation, Filing 81, granting in part and denying in part the Motion for Suppression of Evidence Pursuant to Fed. R. Crim. P. 12(b)(3)(C), Filing 35, filed by defendant Ryan D. Terry. The United States timely filed a Statement of Objections to Magistrate Judge's Findings and Recommendation challenging a particular portion of the Magistrate Judge's ruling. Filing 82. As discussed below, the Court grants the objection to the Magistrate Judge's recommendation to partially suppress certain statements but adopts the Magistrate Judge's findings and recommendation as to the unchallenged recommendation to partially deny Defendant's Motion for Suppression of Evidence. Accordingly, the Court grants in part and denies in part Defendant's Motion for Suppression of Evidence.

## I.   BACKGROUND[1]

As part of a coordinated operation to investigate a suspected marijuana-distribution operation involving Terry, law enforcement officers apprehended Terry and transported him to an

---

[1] While the Court has reviewed the entire record, the Court provides only selected facts relevant for context and to the questions at issue: whether Defendant unequivocally invoked his Sixth Amendment right to counsel and whether he knowingly and voluntarily waived his *Miranda* rights. Neither party objected to the Magistrate Judge's findings of fact.

interview room at the Omaha Police Department's Central Station on April 21, 2020. Filing 77 at 14, 25. Omaha Police Department ("OPD") Sergeant Aaron Hanson ("Sgt. Hanson"), OPD Detective Nicholas Yarpe ("Det. Yarpe"), and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Donald Mann ("Agent Mann") interviewed Terry. Filing 77 at 48. At the time of the interview, Terry was under arrest, was not free to leave, and had not been given any *Miranda* warnings prior to arriving at the interview room. Filing 77 at 26, 48, 78, 84, 89, 101. The interview began around 6:48 p.m. Ex. 3 at 6:48.[2]

According to video of the interview, Det. Yarpe begins by laying out the investigation and describing the results of surveilling Terry. Ex. 3 at 6:49–6:50. After a few minutes of conversation, Sgt. Hanson tells Terry he "ain't gonna skate on this," he is going to prison, and that he "will lose everything in [his] life the way it is now." Ex. 3 at 6:51–6:52:25. Terry responds, "Alls I know is that I was walking down the street and got pulled over by the cops." Ex. 3 at 6:52:31. Sgt. Hanson interrupts Terry, telling him to "stop" and not to lie. Ex. 3 at 6:52:36–6:52:39. At this point—prior to receiving a *Miranda* advisement—Terry interrupts Sgt. Hanson and says, "Before I do anything else to incriminate myself any further, I—I think I need a lawyer present." Ex. 3 at 6:52:40-44. After Terry makes this statement, there is a brief pause before Det. Yarpe gestures to a piece of paper on the table next to him, which is a *Miranda* Rights Advisory Form (Ex. 4), and says, "Okay, I will read you your rights, okay, and then on the last question you can give me a yes or no if you want your lawyer, okay? Like I said if you have anything on your mind that you would like to ask us, I think we just did a pretty good job of telling you what we have." Ex. 3 at 6:52:47–6:53:05; Filing 77 at 80-81. Sgt. Hanson interjects by saying, "There's something else you need to know;" Det. Yarpe continues, stating, "This isn't just a routine traffic stop where there is marijuana in the

---

[2] Citations to Exhibit 3 refer to the timestamps contained within the video of the interview, and said timestamps correspond with the time of day.

car," and tells Terry officers have the "address, surveillance, and then the stop." Det. Yarpe continues, "I understand that is your right to have a lawyer but this isn't just any normal case where you just do a traffic stop and you have two people in the vehicle, okay?" Sgt. Hanson then states, "And right now your house is surrounded." Ex. 3 at 6:53:07–6:53:32. Officers do not further mention *Miranda* or Terry's statement about a lawyer and continue to speak to Terry about what they observed during their surveillance and explain to Terry "how fucked you are" and that his "best play is to cooperate," in which case he may not even be indicted. Ex. 3 at 6:53:32–6:56:00.

The interview video reflects that the interview continues until approximately 8:14 p.m. when officers leave the interview room, but Agent Mann returns and resumes the interview approximately twelve minutes later. Ex. 3 at 8:14–8:26. Agent Mann continues to talk to Terry one-on-one until 9:27 p.m., at which point Agent Mann looks at the *Miranda* Rights Advisory Form that is still on the table, says, "I forgot to do this" and begins giving Terry a *Miranda*-rights advisory for the first time; Terry replies "yes" he understands each *Miranda* right and "yes" he is willing to talk to Agent Mann at the conclusion of the *Miranda* advisement. Ex. 3 at 9:26:58– 9:27:34. After Terry agrees to talk to Agent Mann, Terry asks, "What about my lawyer?" Agent Mann pauses and replies, "That is tricky for me to answer." Ex. 3 at 9:27:36-49. Agent Mann then reinitiates questioning and continues the interview until approximately 10:00 p.m. Ex. 3 at 9:28– 10:00.

Defendant was subsequently indicted on various marijuana-related charges. *See* Filing 1. Defendant filed his Motion for Suppression of Evidence Pursuant to Fed. R. Crim. P. 12(b)(3)(C), on February 4, 2021, seeking to suppress "statements made during an unwarned custodial interview, as well as suppression of evidence derived from search and seizure warrants that relied on improperly obtained statements." Filing 35. Following an evidentiary hearing, the Magistrate

3

Judge issued an order recommending that the Court grant Defendant's motion to suppress all statements Terry made during the April 21, 2020, interview but deny suppression of any physical evidence obtained from various searches and warrants. *See* Filing 81. The United States then objected to the Magistrate Judge's finding "that Terry invoked his right to counsel." Filing 82 at 1 (citing Filing 81 at 12). Terry did not file an objection.

## II.  DISCUSSION

### A.  Standard of Review

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). 28 U.S.C. § 636(b)(1) requires de novo review "only when a party objected to the magistrate's findings and recommendations." *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 619–20 (8th Cir. 2009) (*quoting Peretz v. United States*, 501 U.S. 923, 939 (1991)). "[T]he failure to file objections eliminates not only the need for de novo review, but any review by the district court." *Id.* at 620.

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . [and] may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

### B.  Analysis

As described, the Court's standard of review differs depending on whether a party objects to any finding or recommendation. Accordingly, the Court first addresses the portion of the Magistrate Judge's findings and recommendation to which no party has objected before turning to the finding that the Terry invoked his right to counsel.

*1.  Unchallenged Findings and Recommendation*

4

Because the Court must engage in de novo review "only when a party objected to the magistrate's findings and recommendations," *Leonard*, 553 F.3d at 619–20 (quoting *Peretz*, 501 U.S. at 939), and need only "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," 28 U.S.C. § 636(b)(1)(C), the Court need not review the majority of the Magistrate Judge's findings or recommendations. The only objected-to portion of the Magistrate Judge's Findings and Recommendation is his finding that Terry invoked his right to counsel. *See* Filing 82. The United States expressly notes that it does not object to the Magistrate Judge's factual findings or finding that evidence obtained from the searches and warrants should not be suppressed. Filing 82. Thus, the Court adopts the Magistrate Judge's findings and recommendation on all grounds except the issue of whether Terry invoked his right to counsel.[3]

### 2. *Challenged Findings and Recommendation*

The Magistrate Judge determined that Terry's in-custody, post-*Miranda* statements should be suppressed because a reasonable officer would have understood Terry's statement, "Before I do anything else to incriminate myself any further, I—I think I need a lawyer present," to be a request for an attorney. Filing 81 at 8-15. The United States objects, arguing Terry's statement was both equivocal, conditional, and not an invocation of his right to counsel. Filing 83 at 2-4. Upon review and application of binding Eighth Circuit precedent, the Court finds Terry's statement is equivocal and not an invocation of his right to counsel.

"[A] suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning." *Davis*, 512 U.S. at 457 (citing *Miranda v. Arizona*,

---

[3] While review of the Magistrate Judge's unobjected-to findings is not necessary, the Court has reviewed the entire record de novo in order to address the United States' objection. The Court concurs with the Magistrate Judge's well-reasoned application of the law to the facts as they relate to Defendant's arguments for suppression other than his finding that Terry invoked his right to counsel.

384 U.S. 436, 469–73 (1966)). "[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). This rule "requires courts to 'determine whether the accused actually invoked his right to counsel.'" *Id.* at 459 (quoting *Smith v. Illinois*, 469 U.S. 91, 95 (1984)). Invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.* (citing *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning"; "[r]ather, the suspect must unambiguously request counsel." *Id.*

The Court concludes that *United States v. Mohr*, 772 F.3d 1143, 1145 (8th Cir. 2014) is binding precedent that makes Defendant's "I think I need a lawyer" statement equivocal to a reasonable officer as a matter of law. In *Mohr*, the defendant was charged with sexual exploitation of a child and attempt to entice a minor to engage in illicit sexual activities based on statements he made during an interview with police officers. During the interview, Mohr stated, "Should I get a lawyer at this time? . . . I think I should get one."[4] *Id.* After Mohr made that statement, officers continued questioning him. *Id.* Mohr subsequently moved to suppress and argued his statement about an attorney was an invocation of his right to counsel. *Id.* The *Mohr* court, noting that "[o]fficers are only required to cease questioning if a suspect's request for an attorney is clear and

---

[4] Mohr made this statement at the very beginning of the interview prior to officers informing him of his *Miranda* rights. *Id.* The court did not consider the timing of the request in relation to the officers' recitation of his rights when concluding that his pre-*Miranda* request was equivocal. *Id.* at 1146.

unambiguous," found that "Mohr's statement 'I think I should get [a lawyer]' was not an unequivocal invocation of his right to counsel." *Id.* at 1145–47 (alteration in original).

Under this precedent, the Court finds Terry's statement equivocal and ambiguous. Terry stated, "I think I need a lawyer present," Ex. 3 at 6:52:40-44, while Mohr stated, "I think I should get one." *Mohr*, 772 F.3d at 1145. The Court finds the two statements are nearly identical, and the Eighth Circuit has ruled such statements are equivocal and not clear demands for a lawyer. *Id.* at 1146.

In his ruling, the Magistrate Judge correctly notes that the Eighth Circuit "historically has not broadly construed defendants' requests for counsel during custodial interrogations," Filing 81 at 10, and *Mohr* exemplifies that construction. While the Magistrate Judge relied on general propositions of law from the Supreme Court and the Eighth Circuit relating to invocation of the right to counsel, *see* Filing 81 at 12-14, *Mohr* demonstrates the application of the general propositions of law to facts, and that application is on point and binding. Furthermore, the Magistrate Judge relied on *Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011), in which the court determined that "I think I should get a lawyer" was an unequivocal, unambiguous request for an attorney. Filing 81 at 10-13. The Court declines to follow the guidance of the Second Circuit because it is bound by Eighth Circuit precedent.

The Court is also not convinced by the Magistrate Judge's reasoning that *Mohr* is distinguishable because "the suspect's statement 'I think I should get one' was preceded by a question—'Should I get a lawyer at this time?' and a questioning officer 'in those circumstances could think the suspect was asking for an opinion or advice . . . .'" Filing 81 at 11-12. The "I think" statements in *Mohr* and the present case are nearly identical, and the Eighth Circuit's analysis provides no reason to believe that the equivocal nature of such language is altered by a preceding

7

question or a lack thereof. Importantly, the Eighth Circuit made no reference to the preceding question when deciding whether "I think I should get one" was an unequivocal request for counsel. Instead, the court looked at the "I think" statement alone and held, "Mohr's statement 'I think I should get [a lawyer]' was not an unequivocal invocation of his right to counsel." *Mohr*, 772 F.3d at 1146 (alteration in original).[5]

Finally, other Eighth Circuit and United States Supreme Court precedent supports a finding that the statement "I think I need a lawyer present" is equivocal. *See Davis*, 512 U.S. at 455 (finding the statement, "Maybe I should talk to a lawyer" was not an unequivocal request for counsel); *United States v. Havlik*, 710 F.3d 818, 821-22 (8th Cir. 2013) (analogizing to *Davis* and finding the statements, "I don't have a lawyer. I guess I need to get one, don't I?" and "I guess you better get me a lawyer then" were ambiguous and equivocal); *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) (finding the statement "Could I call my lawyer?" was ambiguous). Thus, because Terry did not unequivocally invoke his right to counsel, his statements will not be suppressed on this basis.

However, because there is no dispute that Terry was in custody for the entirety of the interview, *see* Filing 81 at 3; Filing 83 at 2; Filing 84 at 3, the Court must still determine whether Terry was properly advised of his *Miranda* rights and whether he freely and voluntarily waived those rights. The Magistrate Judge did not reach this analysis due to his conclusion that Terry invoked his right to counsel. The United States argues Terry voluntarily, knowingly, and intelligently waived his *Miranda* rights after Agent Mann informed him of those rights at

---

[5] Further, the statement "at this time" in *Mohr* makes the circumstances in *Mohr* even more similar to the statement in the present case because the defendant was clearly contemplating getting a lawyer "at this time," not at some hypothetical point in the future. Despite this, the Eighth Circuit still found the defendant's statement equivocal.

approximately 9:27 p.m.[6] Terry argues he raised the issue of counsel after Agent Mann advised him of his rights and that he was intimidated and coerced into waiving his rights and incriminating himself because of the length of the interview, the officers' threats, and the denial of Terry's request for counsel.[7] Filing 84 at 6-7. Upon consideration, the Court finds Terry freely, deliberately, and knowingly waived his rights.

"A waiver of the Fifth Amendment privilege against self incrimination is valid only if it is made voluntarily, knowingly, and intelligently." *United States v. Syslo*, 303 F.3d 860, 865 (8th Cir. 2002) (citing *Miranda*, 384 U.S. at 444).

> Th[is] inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal citations omitted).

The Court turns first to voluntariness to determine whether Terry's freely waived his rights by continuing to talk with Agent Mann after hearing his rights. "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011) (quoting *United States*

---

[6] The United States does not object to the Magistrate Judge's finding that all statements made prior to the *Miranda* advisement at 9:27 p.m. should be suppressed. *See* Filing 81 at 7-8 (Magistrate Judge's findings); Filing 82 (United States' objection).

[7] Terry does not argue that the officers deliberately engaged in a "two step interrogation process in an effort to circumvent Miranda requirements." *United States v. Torres-Lona*, 491 F.3d 750, 757 (8th Cir. 2007). Thus, the Court need not reach the issue. *See Torres-Lona*, 491 F.3d at 758 ("Where a defendant alleges that his post Miranda statement was obtained in the course of a two part interrogation, the prosecution bears the burden of establishing by a preponderance of the evidence that the failure to provide warnings at the outset of interrogation was not deliberate." (citing *United States v. Ollie*, 442 F.3d 1135, 1142–43 (8th Cir. 2006))). Further, the interview video demonstrates Agent Mann's response and intent regarding the lack of an initial *Miranda* advisement: "I forgot to do this." Ex. 3 at 9:26. All three law enforcement officers testified that their failure to *Mirandize* Terry was "simple oversight" and not intentional. Filing 77 at 70, 80-82, 91, 105.

*v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Id.* at 428 (quoting *LeBrun*, 363 F.3d at 724). The Court assesses the totality of the circumstances by "examining both the 'conduct of the officers and the characteristics of the accused'" and considering "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Id.* (quoting *LeBrun*, 363 F.3d at 724 and *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004)). "Furthermore, '[a] truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will . . . .'" *Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001) (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)).

Applying these general principles, the Eighth Circuit rejected a defendant's arguments that he was coerced and his statements were involuntary in *Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir. 1988). The court held that "[t]he seven and one-half hour interrogation, Sumpter's IQ of 89, and the special agent's references to Sumpter's child and wife, even if considered in combination with one another, do not make the confession involuntary." *Id.* The court found Sumpter's statements voluntary despite "his interrogators ma[king] implied promises of leniency and treatment for alcoholism if he were to confess." *Id.*

In *LeBrun*, 363 F.3d at 724, the court again found a defendant's statements were voluntarily made when the interviewing "agents never shouted at LeBrun or physically threatened him." Despite the United States conceding that "it used psychological pressure to facilitate a confession," the court affirmed the district court's finding that the psychological pressure alone did not render LeBrun's confession involuntary. *Id.* (citing *United States v. Astello*, 241 F.3d 965, 967–68 (8th

10

Cir. 2001) for the proposition "that tactics such as subjecting a suspect to psychological pressure, making false promises, playing on a suspect's emotions, and using his family against him did not render a confession involuntary"). The court went on to state that "[g]enerally, we have concluded that where the defendant possessed at least average intelligence, then his inculpatory statements were not compelled." Id. at 726 (collecting cases).

Similarly, in United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005), the court "note[d] that officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices." However, the court went on to state that "[n]one of these tactics render a confession involuntary" unless they overbear the defendant's will. Id. In finding Brave Heart's statements voluntary, the court noted that he was "not a sophisticated man, but he is not a minor, he has completed the eleventh grade, he has had at least some prior experience with the criminal justice system, and he did not have difficulty understanding the questions put to him." Id. Accordingly, the court concluded, "These characteristics weigh in favor of the voluntariness of his confession." Id.

In Boslau, 632 F.3d at 428–29, the court considered, among other factors including a short interview length and lack of custody, that "Boslau was an adult of average intelligence, and he already had some experience with the criminal-justice system." The interviewers "were not physically aggressive towards Boslau, and they did not create any more psychological pressure than is commonly associated with interrogations." Id. (emphasis supplied). "At most, the investigators stated that they may prosecute Boslau and that they may be willing to show him leniency if he cooperated." Id. The court found that Boslau's statements were voluntarily made.

In the present case, Agent Mann advised Terry of his *Miranda* rights at 9:27 p.m. Ex. 3 at 9:27. Terry stated that he understood each right and was willing to speak with Agent Mann. Ex. 3 at 9:27. Terry then equivocally asked, "What about my lawyer?" Ex. 3 at 9:27.[8] Agent Mann replied, "That is tricky for me to answer," and the interview continued. Ex. 3 at 9:27-10:00. Despite taking place while Terry was in custody at a police station, these circumstances are not coercive in light of the Eighth Circuit's interpretation of voluntariness. Further, upon review of the interview, the Court notes that Terry is a mature adult who evidenced no issues of mental or physical defect during the three-to-four-hour interview and appeared to be reasonably well-educated.[9] *See Sumpter*, 863 F.2d at 565 (holding that the defendant made voluntary statements despite a seven-and-half-hour interrogation); *Boslau*, 632 F.3d at 428–29 (considering the fact that the defendant was "an adult of average intelligence" favored a finding of voluntariness); *LeBrun*, 363 F.3d at 726 (g]enerally, we have concluded that where the defendant possessed at least average intelligence, then his inculpatory statements were not compelled.").

However, Terry argues the officers' statements, made before he waived his *Miranda* rights, coerced him into waiving his rights and continuing the interview. *See* Filing 84 at 6-7. In addition to the comment "You ain't gonna skate on this" mentioned above, Ex. 3 at 6:51, Terry points to several other statements officers made during the course of the interview as being coercive:

- "You're going to lose everything. Your reputation in the community, your beautiful house, your wife, you're going to prison . . . you will lose everything in your life the way it is now.";

---

[8] While Terry contends that Agent Mann continued to question him in violation of his request for an attorney, the Court has already determined that Terry's first reference to an attorney was equivocal. Subsequently asking about his attorney after he was finally given his *Miranda* warning is even more equivocal and is insufficient to invoke his right to counsel.

[9] The United States points out that Terry attended two years of college. *See* Filing 83 at 9 (citing Filing 11)

- "Once you're indicted you don't stay in Omaha. There are no federal jails in Omaha so you'll be a long ways from family and kids.";

-  "And right now your house is surrounded."

Ex. 3 at 6:50–6:58.

As evidenced by Terry's demeanor throughout the interview, these statements did not overbear his will. This is particularly true when the Court considers that "references to [a defendant's] child and wife" and "implied promises of leniency" do not render statements involuntary. *Sumpter*, 863 F.2d at 565. "Furthermore, '[a] truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will." *Simmons*, 235 F.3d at 1133 (quoting *Ballard*, 586 F.2d at 1063). In sum, Terry's interview did not involve "any more psychological pressure than is commonly associated with interrogations." *Boslau*, 632 F.3d at 429. Considering the totality of the circumstances, the Court finds Terry's waiver of his rights and his decision to continue speaking with Agent Mann were not "extracted by threats, violence, or express or implied promises sufficient to overbear [Terry's] will and critically impair his capacity for self-determination," *Boslau*, 632 F.3d at 429, and that the United States has proven the voluntariness of Terry's statements by a preponderance of the evidence.

The Court next examines whether Terry's waiver was made knowingly, with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. A knowing waiver must be supported by facts demonstrating "the requisite level of comprehension." *Id.* In other words, the defendant must be "'sober and in control of his faculties' at the time of his inculpatory statements." *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007) (finding the defendant's waiver was knowing because he was lucid,

13

cooperative, and "did not appear to be so intoxicated that he was unaware of his rights and the consequences of waiving those rights"); *see also United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (holding "somewhat diminished capacity to resist coercion to mental defect," such as the inability to read or write, does not necessarily invalidate a waiver of rights).

During the interview, Agent Mann advised Terry of his *Miranda* rights at 9:27 p.m., and Terry stated that he understood each right and was willing to speak with Agent Mann. Ex. 3 at 9:27. Terry does not argue that his waiver was unknowing or unaware, or that he was intoxicated or has or had diminished capacity. As previously noted, the video demonstrates that Terry is a mature adult who evidenced no issues of mental or physical defect during the three-to-four-hour interview and appeared to be reasonably well-educated. For these reasons, the Court finds Terry's waiver, both by expressly agreeing to waive his rights and by effectively waiving his rights by continuing to speak with Agent Mann, was knowing and made with full awareness of the rights he was giving up and the consequences of doing so. Thus, the Court will not suppress his post-*Miranda* statements.

### III. CONCLUSION

Accordingly, the Court grants the United States' objection, adopts the Magistrate Judge's Findings and Recommendation as to all grounds except the issue of whether Terry invoked his right to counsel, and declines to adopt the Magistrate Judge's finding that Terry unequivocally invoked his right to counsel.

IT IS ORDERED:

1.  Plaintiff's Statement of Objections to Magistrate Judge's Findings and Recommendation on Defendant's Motion to Suppress, Filing 82, is granted;

2.  The Court adopts the Magistrate Judge's Findings and Recommendation, Filing 81, insofar as it recommends granting Defendant's Motion to Suppress and Exclude Evidence as to Defendant's statements made prior to any *Miranda* warnings and denying the motion as to the evidence obtained from warrants;

3.  The Court declines to adopt the Magistrate Judge's Findings and Recommendation, Filing 81, insofar as it recommends suppression of Defendant's statements after receiving his *Miranda* rights;

4.  Defendant's Motion for Suppression of Evidence Pursuant to Fed. R. Crim. P. 12(b)(3)(C), Filing 35, is granted as to Defendant's statements made prior to any *Miranda* warnings and is otherwise denied; and

5.  The Clerk of Court is ordered to terminate the pending motions at Filing 35, Filing 81, Filing 82, and Filing 84.

Dated this 23rd day of July, 2021.

BY THE COURT:

Brian C. Buescher
United States District Judge

15