IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>RYAN D. TERRY, JEFFREY D. DAILEY, and TNT ASSOCIATES, LLC, A Nebraska Limited Liability Company,<br><br>　　　　　　Defendants. | 8:20-CR-248<br><br>MEMORANDUM AND ORDER ON MOTION TO EXCLUDE EVIDENCE AND REQUEST FOR EVIDENTIARY HEARING |

## I.　INTRODUCTION

The Government has charged Defendants Ryan D. Terry, Jeffrey D. Dailey, and TNT Associates, LLC, with offenses related to the distribution of marijuana and money laundering. Filing 1 at 1–7. Defendants have filed a Motion to Exclude Evidence and Request for Evidentiary Hearing. Filing 100. In general, their Motion asks the Court to exclude testimony from an expert of the Government's, evidence of Defendants distributing legal hemp, evidence that the Government has not yet produced, and the statements of alleged co-conspirators. Filing 100 at 1–2. For the reasons stated herein, Defendants' Motion is denied.

## II.　BACKGROUND

In April of 2020, law enforcement officers received information that defendant Terry was distributing large amounts of marijuana and tetrahydrocannabinol (THC) products.[1] According to the Government, law enforcement officers were already aware of Terry because he had prior arrests and a felony conviction for intent to deliver marijuana. Filing 105 at 1. Based on the information they received, law enforcement began investigating Terry and his drug trafficking

---

[1] The Court draws from information in the Government's brief to provide this section, which is solely to provide the alleged background of this case.

1

enterprise. As represented in the Government's Brief, during the investigation, law enforcement conducted a controlled buy of five pounds of marijuana from Terry and defendant Dailey, with Dailey acting as a middle-man broker between the purchaser and Terry. Law enforcement surveilled Terry's residence before the controlled buy and allegedly observed Terry putting a package in his truck and driving to Dailey's house. The purchaser arrived later and all three entered the garage to Dailey's home. The deal is allegedly captured on a recording device.

After conducting the controlled buy, the Government claims that the purchaser told law enforcement that Terry had an additional 30 pounds of marijuana in his truck and was going back to Terry's residence to retrieve an additional 20 pounds. Filing 105 at 3. While following Terry, law enforcement officers allegedly observed him placing a duffle bag from his truck in Dailey's vehicle and another duffle bag in the trunk of Dailey's vehicle. Both Dailey and Terry were in the vehicle when officers initiated a traffic stop. According to the Government, officers found two bags in Dailey's vehicle containing approximately 19 pounds and 30 pounds of marijuana, respectively. Filing 105 at 4.

After arresting Terry, investigators read him his *Miranda* rights and Terry explained during a subsequent interview that he had been trafficking marijuana for the last seven years, with a normal order being 30 to 50 pounds. The Government states in its Brief that a later search of Terry's home allegedly located $116,000, drug paraphernalia, marijuana, marijuana derivatives, drug packaging, and other items used in drug sales. Filing 105 at 5. Investigators also obtained a search warrant for Terry's phone, the contents of which showed several text messages about selling and distributing narcotics and videos and photos of narcotics, cash, and drug-related images.

On September 24, 2020, the grand jury indicted Terry, Dailey, and the entity TNT Associates, LLC, with drug-dealing and money-laundering offenses. Filing 1. Defendants filed the

present Motion to Exclude Evidence and Request for Evidentiary Hearing on October 21, 2022. Filing 100.

### III. EXCLUSION OF GOVERNMENT'S EXPERT

Defendants request that the Court exclude the testimony of Gregory Beall, a Nebraska Public Service Laboratory technologist and Government expert, under *Daubert* and Federal Rule of Evidence 702 or, alternatively, for failure to comply with Federal Rule of Criminal Procedure 16. Filing 101 at 3–6. Related to this request is Defendants' request for an evidentiary hearing to ensure Defendants have access to all expert witness reports and to evaluate expert evidence prior to trial. Filing 101 at 6.

#### A. Failure to Comply with Rule 16

The Court begins with Defendants' argument that Beall's testimony should be excluded for failure to comply with Federal Rule of Criminal Procedure 16. As represented in Defendants' Brief in Support, Defendants requested expert witness discovery on October 7, 2022, but the Government did not produce any documents in response. Filing 101 at 3. Defendants assert that this means the Government should be barred from introducing any expert materials that have not already been produced, which somehow means that Beall's testimony should be excluded. Filing 101 at 6. Otherwise, Defendants contend, they will be unable to prepare for trial. Filing 101 at 6. The Court finds Defendants' argument unpersuasive.

"Criminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559, (1977)). Ordinarily, "a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Id.*

3

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the Government, upon the defendant's request, to disclose expert testimony. *See* Fed. R. Crim. P. 16(a)(1)(G). The district court must set a deadline for the Government to disclose expert testimony, which must be "sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii). The Government has a continuing duty to disclose additional expert testimony. *See* Fed. R. Crim. P. 16(a)(1)(G)(vi), (c). "If the government fails to comply, the district court may order the government to disclose the evidence, grant a continuance, prohibit use of the evidence at trial, or enter any other order that is just under the circumstances." *United States v. Buchanan*, 604 F.3d 517, 526 (8th Cir. 2010) (internal quotation marks omitted) (quoting *United States v. Shepard*, 462 F.3d 847, 866 (8th Cir. 2006)).

In this case, the Court entered a Progression Order mandating expert disclosures by October 7, 2020. Filing 17 at 1. The Government explains, and Defendants do not dispute, that it gave notice to Defendants of its three expert witnesses, including Beall, by this deadline. Filing 23 (Notice of Compliance); Filing 105 at 9–10. Defendants have not pointed to any reports, experts, or testimony that have not been produced. They have also failed to show that the Government's October 7, 2020, disclosures were deficient in some way. Their argument that the Government has failed to turn over expert testimony in a timely fashion is without merit. The Court expects that the Government will continue to disclose any additional expert testimony as this case progresses under the Government's continuing duty to disclose, but it will not bar the disclosure of new evidence at this time as Defendants request.

### B. *Daubert* and Rule 702

Defendants next argue that Beall's testimony should be excluded as deficient under Federal Rule of Evidence 702 and the *Daubert* standard. According to Defendants, Beall's lab report,

4

which tested suspected narcotics seized from Defendants by law enforcement, demonstrates that he did not reach his conclusion using reliable scientific principles. Filing 101 at 3. The Government responds that Beall used Gas Chromatography Mass Spectrometry (GC-MS) to test for the presence of sufficient levels of THC to warrant the filing of legal charges. Filing 105 at 13–14. According to the Government, GC-MS is the "gold standard" for drug testing that has been found reliable in every court in the United States. Filing 105 at 13.

A district court serves as a gatekeeper in determining the admissibility of expert testimony. *See United States v. Smith*, 789 F.3d 923, 930 (8th Cir. 2015). The Supreme Court's ruling in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and Federal Rule of Evidence 702 "greatly liberalized" the standards for admitting expert testimony. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014). As the Eighth Circuit has explained, application of Rule 702 consists of a three-part test. "First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021). "Second, the expert must be qualified to assist the finder of fact." *Id.* "Third, the testimony must be reliable or trustworthy in an evidentiary sense." *Id.* A district court has "broad discretion" in deciding whether expert testimony is relevant and reliable. *Smith*, 789 F.3d at 930.

In *Daubert*, the Supreme Court outlined "four non-exclusive factors" relevant to the reliability requirement of this three-part test. *Johnson*, 754 F.3d at 562.

> These factors are (1) whether the expert's theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review or publication, (3) the known or potential rate of error of the theory or technique, and (4) whether the technique or theory is generally accepted.

*In re Bair Hugger*, 9 F.4th at 777.

Defendants point to four lab reports from Beall that they claim show Beall's testimony as to the reports' contents is inadmissible.[2] These reports are preliminary tests on some of the suspected narcotics seized from Defendants by law enforcement: green plant material, yellow waxy material, gummy candies, and e-cigarette cartridges. Filing 101-1 at 1–4. Beall performed GC-MS testing on all these materials. Beall wrote in his reports that 492.20 grams of the green plant material he tested had a tetrahydrocannabinol to cannabidiol (CBD) ratio greater than 1, which, according to Beall's report, was consistent with "drug-type cannabis." Filing 101-1 at 3. The rest of the green plant material Beall tested was determined to be non-drug-type cannabis, or hemp. Filing 101-1 at 1, 3–4. As for the yellow wax material, gummy candies, and e-cigarette cartridges, Beall recorded in his reports that THC was detected and that each substance was a THC extract. Filing 101 at 1–2.

Defendants attack both the relevancy and reliability of these reports. Much of Defendants' argument rests on the statutory definition of legal hemp, which is "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). In general, Defendants contend that because the reports do not state that the substances determined to be narcotics contained a delta-9 tetrahydrocannabinol concentration of greater than .3 percent on a dry weight basis—in other words, that they do not meet the statutory definition of legal hemp—Beall's reports are both irrelevant and unreliable. Filing 101 at 4–5.

---

[2] The Court notes that these lab reports have not been identified and authenticated by affidavit as required by the Court's local rules. *See* NECivR 7.1(a)(2)(C). Nevertheless, the Government does not dispute the reports' identity or authenticity in their Brief in Opposition. Moreover, the reports are the only indication the Court has as to what Beall's testimony will be. Without them, the Court's analysis as to the admissibility of Beall's testimony under Rule 702 and *Daubert* would be impossible. Therefore, the Court will look to Beall's reports to help resolve Defendants' Motion. *See Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006) (holding that district courts have "broad discretion" to enforce local rules).

The Court first notes that Defendants do not even attempt to challenge GC-MS testing's ability to detect a substance's concentration of THC.[3] In any event, such a challenge would be difficult given that GC-MS testing is "a widely used scientific method of quantitatively analyzing the constituents of a mixture." *Bullcoming v. New Mexico*, 564 U.S. 647, 654 n.1 (2011). Defendants have not shown that Beall's use of GC-MS testing to reach his conclusions was improper. Thus, based on what is presently before the Court, Beall's testimony as to the contents of these reports is reliable.

Turning to Defendants' relevancy argument, the Court finds that Beall's testimony as expressed in his reports would be "useful to the finder of fact" in determining whether Defendants possessed and distributed illegal substances. *In re Bair Hugger*, 9 F.4th at 777. Beall concluded in his reports that 492.20 grams of green plant material was illegal cannabis and that the yellow wax, gummy candies, and e-cigarette cartridges contained THC. The Government has indicated in its brief that it intends to offer circumstantial evidence showing that Defendants knew that the substances they were distributing were illegal. These conclusions, combined with other circumstantial evidence, would assist the jury in determining whether Defendants possessed and distributed narcotics. *See United States v. Taylor*, 813 F.3d 1139, 1148 (8th Cir. 2016) ("[I]t is well established in this circuit that the identity of a controlled substance can be proven beyond a

---

[3] For the first time in their reply brief, Defendants claim that the manual "Recommended methods for the Identification and Analysis of Cannabis and Cannabis Products" from the United Nations Office on Drugs and Crime (UNODC), which Beall used in conducting GC-MS testing, states that a specific gas chromatography column would need to be used to accurately determine the concentration of CBD when conducting a GC-MS analysis. Filing 108 at 4; Filing 108-1. They attached the purported manual to their reply brief; however, in violation of local rule 7.1(a)(2)(C), Defendants neglected to file an affidavit identifying and authenticating this document. *See* NECivR 7.1(a)(2)(C). The Court declines to evaluate Beall's GC-MS analysis based on a supposed manual offered in violation of the Court's local rules. *See Reasonover*, 447 F.3d at 579.

Furthermore, based on this supposed manual, Defendants assert, without any expert testimony or other authority in support, that Beall needed to perform additional testing when determining the quantity of THC in the green plant material. Filing 108 at 4. To the contrary, the reports state that the quantity of THC relative to total CBD was determined using UNODC guidance. Filing 101-1 at 1, 3–4. Defendants have not provided the Court with any expert testimony or other authority indicating that Beall did not follow UNODC guidance when conducting GC-MS testing.

reasonable doubt by circumstantial evidence and opinion testimony." (quoting *United States v. Cole*, 537 F.3d 923, 927 (8th Cir. 2008))); *cf. United States v. Harris*, 36 F.4th 827, 831 (8th Cir. 2022) (holding that testing a small portion of methamphetamine for purity combined with co-conspirators referring to the drugs as "ice" was sufficient evidence to support the district court's conclusion as to the drug type). The Court also does not find that Beall's testimony regarding the reports' conclusions that some material was legal hemp is irrelevant under Rule 702. Such testimony may be useful in explaining GC-MS testing to the jury and affording them a complete understanding of the process Beall used to test the seized materials.

The Court emphasizes that this order is not a determination that all of Beall's testimony is admissible. The only indication of what Beall might testify to is the reports Defendants refer to in their Motion. The Court only concludes that, based on the arguments Defendants present in support of their Motion, Beall's testimony as to the contents of these reports is admissible under Rule 702 and *Daubert*.

### C. Request for Evidentiary Hearing

Related to their request to exclude Beall's testimony is Defendants' desire for an evidentiary hearing to obtain documents and testimony. Filing 101 at 6. Defendants state that, without an evidentiary hearing, they cannot determine whether they need to procure an expert witness. Filing 101 at 6. The purpose of an evidentiary hearing is to make factual findings on disputed facts. *See, e.g., Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020) (noting that an evidentiary hearing may be used to resolve disputed facts on a motion to dismiss for lack of personal jurisdiction); *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (evidentiary hearing required if habeas petitioner alleges disputed facts that, if true, entitle him or her to relief); *United States v. Hammer*, 3 F.3d 266, 272 (8th Cir. 1993) (holding that a factual dispute over a presentence

investigation report "triggers the right to [an evidentiary] hearing"). It is not a discovery tool to assist Defendants in preparing for trial. *See Johnson*, 228 F.3d at 924. The request for an evidentiary hearing is denied.[4]

### IV. Evidence of Hemp and CBD Possession and Distribution

Defendants argue that "any evidence or argument regarding Defendants' possession of, intent to distribute, or conspiracy to distribute any amounts of [CBD] or legal hemp" must be excluded under Federal Rules of Evidence 401 and 403. The Government counters that Defendants' possession and distribution of CBD and hemp is intrinsic to Defendants' offenses and is relevant.

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency" to make a consequential fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)–(b). The standard for relevancy is low. *See United States v. Oldrock*, 867 F.3d 934, 940 (8th Cir. 2017). Federal Rule of Evidence 403 permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This court has "broad deference in determining the relevancy and admissibility of evidence" and "great deference" in "balancing the value of evidence against its prejudicial effect." *United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting *United*

---

[4] The Court further notes that, even if Defendants requested an evidentiary hearing to determine whether evidence should be excluded, this request would be denied. An evidentiary hearing over whether to exclude evidence is required when "the moving papers are 'sufficiently definite, specific, and detailed to establish a contested issue of fact.'" *United States v. Foster*, 15 F.4th 874, 876 (8th Cir. 2021) (quoting *United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013)). No evidentiary hearing is necessary if the court can determine as a matter of law that exclusion is not required. *See United States v. Yielding*, 657 F.3d 688, 705 (8th Cir. 2011). In the present case, Defendants' Motion does not show that there are any contested issues of fact necessitating an evidentiary hearing. Instead, the Court is able to resolve the Motion on purely legal grounds. Accordingly, based on the information presently before the Court, assuming Defendants made a proper request for an evidentiary hearing it would be denied. *See Yielding*, 657 F.3d at 713 & n.2 (holding that the district court properly refused to hold an evidentiary hearing when the movant failed to present "any specific, detailed facts" in support of his motion).

*States v. Wallace*, 722 F.2d 415, 416 (8th Cir. 1983) & *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002)).

The Court denies Defendants' request as premature. The Court cannot determine the relevancy of evidence nor perform Rule 403 balancing without the benefit of knowing the Government's evidence in this case. It is possible that the evidence may show that Defendants possessed and distributed both legal and illegal substances together. In that case, the evidence of possessing and dealing CBD and legal hemp may be necessary to "complete[] the story or provide[] a total picture of the charged crime[s]." *United States v. Brooks*, 715 F.3d 1069, 1076 (8th Cir. 2013) (quoting *United States v. Ruiz–Chavez*, 612 F.3d 983, 988 (8th Cir. 2010)); *see also United States v. Young*, 753 F.3d 757, 770 (8th Cir. 2014) (noting that intrinsic evidence "may help to fill the gaps in the jury's understanding of the crime charged"). Presently, however, the Court is unable to definitively state whether this evidence is admissible or inadmissible. *See Ribeiro v. Baby Trend, Inc.*, No. 8:12CV204, 2017 WL 1393088, at *2 (D. Neb. Apr. 17, 2017) (declining to engage in Rule 403 balancing prior to trial).

### V. STATEMENTS OF ALLEGED COCONSPIRATORS

Defendants also ask the Court to exclude "any statements of non-testifying witnesses that allegedly conspired with Defendants." Defendants claim that such statements are hearsay and that the coconspirator exception to the hearsay rule does not apply because the Government has not shown that a conspiracy to distribute illegal substances existed. *See* Fed. R. Evid. 801(d)(2)(E) (providing that a statement of the opposing party's coconspirator during and in furtherance of the conspiracy that is offered against the opposing party is not hearsay). Like their request to exclude evidence of hemp and CBD possession and distribution, this request is premature. The Court has no idea what statements Defendants are talking about, whether the evidence at trial will show the

existence of a conspiracy, if another hearsay exception will apply, or even if the statements will be offered to prove the truth of the matter asserted. Moreover, Defendants completely ignore that, under *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978), the Court may provisionally admit the statement of an alleged coconspirator subject to the Government proving, by a preponderance of evidence, that the statement was made during the course and in furtherance of the conspiracy. *See United States v. Mayfield*, 909 F.3d 956, 960 (8th Cir. 2018) (outlining the procedure under *United States v. Bell* to properly admit a coconspirator's statement over a hearsay objection). Thus, contrary to Defendants' contention, the Government is not required to prove the existence of a conspiracy before trial in order for coconspirator statements to be admissible. Therefore, this request is denied as premature.

## VI. EXCLUSION OF EVIDENCE NOT YET PRODUCED

Defendants broadly ask this Court to "exclude all evidence that was formally requested on October 7, 2022, or in earlier communications" that has not been produced. Filing 101 at 8. This request is denied. Defendants do not point the Court to any rule that the Government has violated or any other impropriety on the part of the Government warranting such action. Nor do they point to any statute or rule authorizing such a request for exclusion. Simply because Defendants made a request for documents does not mean that the Government is forever barred from disclosing new evidence in the future. The Government has a continuing duty to disclose new evidence, Fed. R. Crim P. 16(c), and Defendants have not given the Court any reason to think that the Government has violated that duty.

## VII. CONCLUSION

Defendants' Motion to Exclude Evidence and Request for Evidentiary Hearing is both without merit and premature. Accordingly,

11

IT IS ORDERED THAT Defendants' Motion to Exclude Evidence and Request for Evidentiary Hearing, Filing 100, is denied.

Dated this 20th day of December, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge